

```
                                              United States District Court
                                              Southern District of Texas
                                                      FILED
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS        NOV 1 9 2001
                  BROWNSVILLE DIVISION
                                                    Michael N. Milby
                                                     Clerk of Court
```

| | |
|---|---|
| **PAR, S.A. de C.V.,** § | |
| § | |
| **Plaintiff,** § | |
| § | **CIVIL ACTION NO. B-01-172** |
| § | |
| **vs.** § | |
| § | |
| **SHAVEL ASSOCIATES, INC.,** § | |
| § | |
| **Defendant.** § | |

## DEFENDANT'S ORIGINAL ANSWER

Subject to its Motion to Transfer Venue and without waiving same, Defendant Shavel Associates, Inc. ("Shavel") files this Original Answer to Par, S.A. de C.V.'s ("Par") Complaint.

1. Defendant admits the averments in paragraph 1 of Par's Original Complaint.

2. Defendant admits the averments in paragraph 2 of Par's Original Complaint. However, while Shavel admits that it does business in the Southern District of Texas, Shavel denies that it conducts any business in the Brownsville Division of the Southern District of Texas. Thus, Shavel denies that venue is proper in the Brownsville Division.

3. Shavel admits the averments in paragraph 3 of Par's Original Complaint.

4. Shavel admits that venue is proper in the United States District Court for the Southern District of Texas. Shavel, however, specifically denies that venue is proper in the Brownsville Division.

5. Shavel admits the averments in paragraph 5 of Par's Original Complaint, with the exception that Shavel does not do business with Macy's.

6. Shavel admits the averments in paragraph 6 of Par's Original Complaint.

7. Shavel admits the averments in paragraph 7 of Par's Original Complaint.

8. Shavel admits that some of the finished fabrics created by HMW were sold to Par. Shavel also admits that Par used some of the fabrics created by HMW to manufacture knit sheets, pillow cases and related bed linens. Otherwise, Shavel denies the averments in paragraph 8 of Par's Original Complaint.

9. Shavel admits that Par sold some finished products to Shavel. Shavel denies that Par sold all of the finished products to Shavel. Shavel admits it shipped finished products from its Laredo, Texas warehouse. Otherwise, Shavel denies the remaining averments in paragraph 9 of Par's Original Complaint.

10. Shavel admits the averments in paragraph 10 of Par's Original Complaint with respect to some portions of Shavel's business with Par. Otherwise, Shavel denies the averments in paragraph 10 of Par's Original Complaint.

11. Shavel admits that it placed certain orders with Par and accepted certain shipments at Shavel's warehouse in Laredo, Texas. Shavel denies the remaining averments in paragraph 11 of Par's Original Complaint.

12. Shavel denies the averments in paragraph 12 of Par's Original Complaint.

13. Shavel admits or denies the averments in paragraph 13 of Par's Original Complaint by incorporating by reference paragraphs 1-12 above, as if fully set forth herein.

14. Shavel admits the averments in paragraph 14 of Par's Original Complaint, with respect to some of the sales made by Par. Otherwise, Shavel denies the averments in paragraph 14 of Par's Original Complaint.

15. Shavel admits the averments in paragraph 15 of Par's Original Complaint, with respect to some of the sales made by Par. Otherwise, Shavel denies the averments in paragraph 15 of Par's Original Complaint.

16. Shavel denies the averments in paragraph 16 of Par's Original Complaint.

17. Shavel denies the averments in paragraph 17 of Par's Original Complaint.

18. Shavel denies the averments in paragraph 18 of Par's Original Complaint.

19. Shavel admits or denies the averments in paragraph 19 of Par's Original Complaint by incorporating by reference paragraphs 1-18 above, as if fully set forth herein.

20. Shavel denies the averments in paragraph 20 of Par's Original Complaint.

21. Shavel admits or denies the averments in paragraph 20 of Par's Original Complaint by incorporating by reference paragraphs 1-19 above, as if fully set forth herein.

22. Shavel denies the averments in paragraph 22 of Par's Original Complaint. Additionally, Shavel denies that Par is entitled to recover attorneys' fees for the services of its attorneys herein.

23. Although no responsive pleading is required to the "prayer" in Par's Original Complaint, Shavel denies that Par is entitled to any of the relief requested in said "prayer."

## Affirmative Defenses

24. Shavel has the right to setoff and offset.

25. Shavel has performed, in full or in part, pursuant to its agreement with Par.

26. Par is not entitled to recover from Shavel because there is a failure of consideration, in whole or in part.

27. Par is not entitled to recover from Shavel due to fraud and fraud in the inducement.

28. Par is not entitled to recover from Shavel due to illegality.

29. Par is not entitled to recover from Shavel due to payment.

30. Par is not entitled to recover from Shavel due to estoppel.

31. Par is not entitled to recover from Shavel due to waiver.

32. Par is not entitled to recover from Shavel because Par has unclean hands.

33. Par is not entitled to recover from Shavel due to accord and satisfaction with respect to all or part of the alleged debt.

34. Par is entitled to recover, if anything, no more than $750,699.77, due to a November 16, 2000 agreement of the parties.

WHEREFORE, Shavel Associates, Inc. requests that Plaintiff take nothing by this suit; and that Shavel Associates, Inc. be granted such other and further relief, both in law and in equity, to which it may be justly entitled.

## COUNTERCLAIMS

Subject to its Motion to Transfer Venue and without waiving same, Shavel asserts the following counterclaims against Par and demands judgment on same for the damages Shavel has incurred due to Par's acts complained of herein.

## FACTUAL BACKGROUND

35. Par contracted with Shavel to manufacture proprietary product solely for Shavel. In order to induce Shavel to enter such contract, Par misrepresented its manufacturing, production and packaging costs to Shavel. Par also misrepresented to Shavel the amount of yarn lost during the knitting process and the quantity of fabric lost during the dyeing process. Par continued to make such misrepresentations to Shavel throughout the parties' business relationship, both prior to the formation of HMW and as the operating partner of HMW after its formation.

36. As correctly stated by Par in paragraph 7 of Par's Complaint, the principals of Shavel and the principals of Par organized a third entity under Mexican law named How Many and When, S.A. de C.V. ("HMW"). HMW would manufacture fabric out of yarn. HMW would sell the fabric to Par. The fabric was manufactured by Par into finished product and sold to Shavel. HMW was formed to enable Shavel and Par to be competitive in the jersey knit fabric business. Shavel relied on Par to "set up" the HMW factory. Specifically, Par was responsible for construction of the HMW factory, purchase of the required machinery and otherwise setting up the infrastructure of HMW. Par was also responsible for the operation of HMW on a day-to-day basis.

37. The product costs in sales from HMW to Par and in turn Par to Shavel were based on a formula the parties agreed to with Shavel relying on Par for information regarding certain costs. Specifically, as cloth has a certain monetary value per square meter of weight, Par received a certain amount of elastic necessary to make the "fitted" portion of the sheet. Additionally, Par received a certain amount for its sewing, the cardboard inserts, its labor, the wash instruction labels, the jersey knit bag and its printed label. Par also contracted with Estrella, a fabric dyer, that billed Par, who in turn invoiced Shavel.

38. Par inflated these and other manufacturing, production and packaging costs and misrepresented these costs to Shavel during the parties' business relationship. Par also continued to make these misrepresentations to Shavel when Shavel, Par and HMW entered into a joint venture agreement regarding sales to WalMart.

39. As previously stated, the parties also set up a joint venture agreement in order to do business with WalMart. The goods would be manufactured by HMW. They would then be picked up by a dyer, Rincon, dyed and finished. Rincon would then send the goods to Par.

Par would cut, sew and package the goods into sheet sets for WalMart. Par then sent the goods to Shavel, who shipped the goods to WalMart.

40. Shavel borrowed money on these goods as inventory and as receivables when the goods were shipped to WalMart. Shavel made payments to Par, retiring the invoices in succession, as cash was available. At no time in this part of the parties' relationship were these invoices a standard sale.

41. Par was responsible for the day-to-day running of HMW. In this regard, in addition to overseeing production and the associated costs, Par was responsible for paying invoices owed by HMW. In this regard, Par was responsible for ensuring that Kaltex, HMW's yarn supplier, was paid quickly enough to enable HMW to avail itself of the 8% cash discount offered by Kaltex. Over time, Par quit making the discounted payments to Kaltex, resulting in HMW losing the discount and associated profits. Par also made misrepresentations to Shavel regarding HMW's operating costs, including, but not limited to, dying costs. Additionally, without Shavel's knowledge or permission, Par used the waste fabric generated by HMW during the manufacturing process for its own means by converting this waste fabric into other products and selling same. Further, Par manufactured goods on HMW machines for sale to entities other than Shavel.

## **BREACH OF CONTRACT**

42. Par contracted with Shavel to manufacture proprietary product solely for sale to Shavel. Par, however, breached the contract with Shavel by selling the proprietary product to Shavel's competitor, Lew & Lubesky. Additionally, Par breached the contract with Shavel by selling the proprietary product to Sam's Club of Mexico. Par's breach of the contract to

solely sell this proprietary product to Shavel caused Shavel to incur damages. Shavel seeks to recover these damages from Par.

43. Additionally, Par breached its contract with Shavel by manufacturing defective, inferior product and selling same to Shavel. Specifically, Shavel paid Par a premium to monitor quality control and produce 100% first quality product for Shavel which Par knew Shavel would in turn sell to retailers. Shavel sold such merchandise to various retailers. Due to the defective, inferior quality of such merchandise these retailers returned the merchandise. Additionally, these retailers cancelled at least $400,000 in orders they had already placed with Shavel, which had yet to be filled, due to the defective, inferior quality of the merchandise. Further, Shavel lost future business with these retailers due to the defective, inferior quality of the merchandise. Shavel seeks to recover these damages from Par.

44. Par also breached its contract with Shavel with respect to WalMart in two respects. First, Par breached its contract with Shavel with respect to WalMart by selling defective, inferior quality merchandise. WalMart refused to pay for such merchandise, thus causing Shavel to incur damages. Additionally, Par agreed to manufacture a specific amount of merchandise for Shavel for resale to WalMart. Par, however, manufactured excess merchandise which it shipped to Shavel without authorization. WalMart refused to buy this excess merchandise. Thus, Shavel was forced to sell such merchandise to other retailers at a loss because Par refused to accept the return of same. Accordingly, Shavel seeks to recover these damages from Par.

45. Par also agreed to manufacture and ship product to Shavel on a timely basis. Par breached this agreement as well. Par's breach of this agreement caused Shavel to incur extensive

penalties, pay additional freight costs, lose market share and absorb excessive chargebacks. Shavel seeks to recover these damages from Par.

### Fraud Regarding HMW Set Up Costs

46.     Shavel and Par entered into an agreement for Par to "set up" the HMW factory on behalf of the partnership. Shavel and Par agreed to split the initial set up costs evenly. Par misrepresented the "set up" costs to Shavel. Thus, Shavel paid Par more than Par was entitled to under their agreement. Shavel relied on Par's misrepresentations regarding the initial set up costs to Shavel's detriment, thereby causing Shavel to incur damages, which Shavel seeks to recover from Par.

### Fraud Regarding Manufacturing, Production and Packaging Costs

47.     Par made misrepresentations to Shavel regarding manufacturing, production and packaging costs. Par made such misrepresentations with respect to its sales to Shavel prior to the formation of HMW, as well as while operating HMW and in conjunction with the "Shavel-Par-HMW joint venture" with WalMart. Shavel relied on these misrepresentations to Shavel's detriment, thereby causing Shavel to incur damages, which Shavel seeks to recover from Par.

### Fraud Regarding Use of HMW Waste

48.     The manufacturing process at HMW resulted in waste fabric remaining after the finished goods were manufactured. Par misrepresented to Shavel the amount of waste fabric generated by the manufacturing process. Par used the waste fabric to manufacture other products for its own benefit, of which neither Shavel or HMW received a benefit. Shavel relied on Par's misrepresentations regarding waste fabric to Shavel's detriment, thereby causing Shavel to incur damages, which Shavel seeks to recover from Par.

### **Breach of Fiduciary Duty/Breach of Loyalty Regarding Use of HMW Waste**

49.     Par's use of the HMW waste fabric for its own benefit, and to the exclusion of a benefit to Shavel and/or HMW, was also a breach of Par's fiduciary duty and duty of loyalty to Shavel. Par breached its fiduciary duty and duty of loyalty by failing to account to the partnership, by failing to hold for the partnership the profit and/or benefit derived by Par from its use of partnership property, and by dealing with the partnership in a manner adverse to the partnership. This breach of Par's fiduciary duty and duty of loyalty caused damages to Shavel, which Shavel seeks to recover from Par.

### **Money Had and Received – Use of HMW Waste**

50.     Par's use of the waste product from the manufacturing process at HMW for its own benefit, and to the exclusion of a benefit to Shavel also entitles Shavel to recover for money had and received. By retaining the proceeds of the sale of product manufactured from HMW's waste product, Par has retained money that in equity and good conscience belongs to Shavel, which Shavel seeks to recover from Par.

### **Breach of Fiduciary Duty/Breach of Loyalty – Sales to Competitors**

51.     Par also used material and/or equipment owned by HMW to manufacture product that was sold to entities other than Shavel. The proceeds of such sales were retained solely by Par. This conduct constitutes a breach of Par's fiduciary duty and duty of loyalty to Shavel. Par breached its fiduciary duty and duty of loyalty by failing to account to the partnership, by failing to hold for the partnership the profit and/or benefit derived by Par from its use of partnership property, and by dealing with the partnership in a manner adverse to the partnership. This breach of Par's fiduciary duty and duty of loyalty caused damages to Shavel, which Shavel seeks to recover from Par.

### Money Had and Received – Sales to Competitors

52. Par's use of material and/or equipment owned by HMW to manufacture product that was sold to entities other than Shavel also entitles Shavel to recover for money had and received. By retaining the proceeds of the sale of product manufactured from HMW's material and/or equipment, Par has retained money that in equity and good conscience belongs to Shavel, which Shavel seeks to recover from Par.

### Breach of Fiduciary Duty/Breach of Loyalty Regarding Operation of HMW

53. Par's misrepresentations and actions while operating HMW also constituted a breach of fiduciary duty/breach of loyalty. Par breached its fiduciary duty/duty of loyalty to Shavel as its partner in HMW. Specifically, while operating HMW, Par made misrepresentations to Shavel regarding manufacturing, production and packaging costs. Additionally, Par failed to pass on to Shavel and/or HMW cost savings resulting from the devaluation of the peso.

### TRIAL BY JURY IS DEMANDED

54. Shavel demands a jury trial in this matter.

WHEREFORE, Shavel Associates, Inc. requests that, upon the trial of this matter, it recover a judgment against Par for all actual damages Shavel has incurred due to Par's actions; prejudgment interest and post-judgment interest as permitted by law and demands judgment for same; costs of court incurred herein; and for such other and further relief to which Shavel may show itself justly entitled.

Respectfully submitted

By: _____
Tom A. Lockhart
Texas Bar No. 12473500
Federal I.D. No. 2257

**ADAMS & GRAHAM, L.L.P.**
222 E. Van Buren St., W. Tower
P O Drawer 1429
Harlingen, Texas 78551-1429
Telephone: 956/428-7495
Facsimile: 956/428-2954

By: _____
Craig A. Harris
State Bar No. 09056750

**WINSTEAD SECHREST & MINICK P.C.**
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2199
Telephone: 214/745-5400
Telecopy: 214/745-5390

ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true & correct copy of the foregoing has been served via

■ Certified mail, return receipt requested
☐ Regular mail
☐ Facsimile
☐ Federal Express
☐ Hand-Delivery

on this 19th day of November, 2001 to the following:

John J. Little
Little, Pedersen, Frankhauser & Cox, L.L.P.
901 Main Street, Suite 5050
Dallas, Texas 75202

Wilkes Alexander
Roerig, Oliveria & Fisher L.L.P.
Suite 9, Price Plaza Building
855 West Price Road
Brownsville, Texas 78520

_____
Tom A. Lockhart

DALLAS_1\3569816\1
11/19/2001 - 38880-1